# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff**

-vs-                                                                   Case No. 2:09-cr-27-FtM-99DNF

**TIMOTHY WILLIAMS,**

    **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration on the following motion filed herein:

> **MOTION:**    **MOTION TO SUPPRESS (Doc. No. 46)**
>
> **FILED:**      June 23, 2009
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

> **MOTION:**    **SUPPLEMENTAL MOTION TO SUPPRESS (Doc. No. 65)**
>
> **FILED:**      July 15, 2009
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

The Defendant, Timothy Williams is requesting that the Court suppress all evidence seized from the Defendant's vehicle and all statements made by the Defendant subsequent to his traffic stop. The Government filed a Response in Opposition to Motion to Suppress (Doc. 51) arguing that the

evidence and statements should not be suppressed. An evidentiary hearing was held on July 17, 2009. The Defendant is charged in a two Count Indictment. On August 27, 2009, the Defendant filed a Supplemental Brief (Doc. 84). The Government filed a Notice (Doc. 85). In Count One, the Defendant is charged with conspiring with others to possess with intent to distribute five (5) or more kilograms of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §841(a)(1) and 841(b)(1)(A)(ii)(ll) and 21 U.S.C. §846. In Count Two, the Defendant is charged with possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §841(a)(1), 841(b)(1)(B)(ii)(ll), and 18 U.S.C. §2.

**I. Testimony**

The Government presented the testimony of a Deputy Stephen[1] Kirkby and Sergeant Peter Hedrick, both from the Lee County Sheriff's Office. (Tr.[2] p. 4, 55) The Government introduced two (2) DVD's as evidence, but did not play the DVD's during the hearing. The Defendant introduced as Exhibit 1, a photograph of the tag on the vehicle; as Exhibit 2, the warning; as Exhibit 3, a dispatch printout; as Exhibit 4, an audio tape transmission that was not played at the hearing; and as Exhibit 5, a copy of a photograph of money bands found in the vehicle. The Court carefully reviewed all of the evidence submitted.

---

[1] The Transcript (79) of the evidentiary hearing spells Deputy Kirkby's first name as "Steven," however the Complaint (Doc. 1) spells his name "Stephen." The Court is unsure of the correct spelling, but will follow the spelling in the Complaint.

[2] "Tr." refers to the Transcript (Doc. 79) of the hearing.

The testimony at the hearing was as follows. On April 9, 2009, Deputy Kirkby was parked on the median on Interstate 75 watching traffic. (Tr. p. 4-5, 53). He saw a four-door black Ford vehicle following too close to a red car in front of it. (Tr. p. 5). Deputy Kirkby pulled out, caught up to the black Ford and followed it for approximately four miles. (Tr. p. 4, 17). He observed the black Ford switch to the left lane and then switch back to the right, squeezing in between a blue car and a commercial vehicle. (Tr. p. 5). Deputy Kirkby estimated that the black Ford was approximately 3 feet from the car in front of it and was traveling at approximately 50 mph. (Tr. p. 5). At approximately 7:03 p.m., Deputy Kirkby stopped the black Ford, approached the vehicle on the passenger side, and made contact with the driver. . (Tr. p. 6, 14, 19). There was a passenger in the vehicle also. (Tr. p. 6). Deputy Kirkby explained to the driver the reason for the stop and told the driver that as long as he had a valid driver's license and no warrants, Deputy Kirkby would issue him a written warning for following too close. (Tr. p. 6, 28). Deputy Kirkby asked the Defendant to exit his vehicle and to go back to the Deputy's vehicle so that Deputy Kirkby could issue him a warning. (Tr. p. 6). He also mentioned that the vehicle's tag was obscured by the border. (Tr. p. 22). The Defendant handed his license to Deputy Kirkby, and Deputy Kirkby began to fill out the forms for a warning. (Tr. p. 7).

Deputy Kirkby asked the Defendant his plans. (Tr. p. 7). The Defendant told him that he was heading to Tampa for a party and to stay for a few days possibly at a friend's or cousin's house.(Tr. p. 7, 32). He said he knew the passenger as Shorty and had known him for five years. (Tr. p. 7). The Defendant said he had no luggage or hygiene items. (Tr. p. 7-8). His demeanor was a bit nervous, his answers were short, he did not maintain eye-contract, and he crossed and uncrossed his arms repeatedly. (Tr. p. 8).

Detective Kirkby walked to the vehicle to speak to the passenger and to obtain the registration for the vehicle. (Tr. p. 8). He asked the passenger his plans, and the passenger said he was traveling with his friend who picked him up on a street corner and asked him if he wanted to take a ride north. (Tr. p. 9). The passenger did not know where he was going, staying for the night, or doing. (Tr. p. 9). He had no luggage or clothes with him. (Tr. p. 9).

Deputy Kirkby returned to the Defendant and asked if he was responsible for the items in the car. (Tr. p. 9). The Defendant responded that he was responsible, and the Defendant said there were no illegal items in the car. (Tr. p. 9). Deputy Kirkby asked if the Defendant would consent to a search of the vehicle, and the Defendant responded "'Nah, I don't think I'm going to let you do that.'" (Tr. p. 9). Deputy Kirkby told the Defendant he had a constitutional right to refuse to allow a search and asked again if the Defendant would consent. (Tr. p. 9-10). Again, the Defendant refused. (Tr. p. 10). Deputy Kirkby called for back-up thirteen (13) minutes into the traffic stop. (Tr. p. 21, 47). Sgt. Hedrick responded to the call. (Tr. p. 55). He was approximately 3 miles away. (Tr. p. 55-56).

When Sgt. Hedrick arrived at the scene, the Defendant and Deputy Kirkby were standing by the patrol car. (Tr. p. 56). Sgt. Hedrick's vehicle is equipped with video equipment. (Tr. p. 60). He had worked with Deputy Kirkby for approximately a year, and knew from his experience that he was there to back-up Deputy Kirkby. (Tr. p. 56). Sgt. Hedrick approached the passenger in the vehicle. (Tr. p. 56). He asked the passenger for registration and insurance from the vehicle, and the passenger responded that the other officer had them. (Tr. p. 57). Sgt. Hedrick noticed that the passenger appeared asleep which Sgt Hedrick found strange. (Tr. p. 57). He asked where they were traveling and the passenger told him they were going to Tampa for a night. (Tr. p. 57). Sgt. Hedrick told Deputy Kirkby what the passenger had said, and Deputy Kirkby said that the driver's and passenger's

stories were different. (Tr. p. 57). Sgt. Hedrick began completing the warning and entered information into his computer for a check on many different data bases. (Tr. p. 58). This check takes approximately five minutes to complete. (Tr. p. 65).

As Sgt. Hedrick completed the computer check, Deputy Kirkby took the drug dog for the free air sniff. (Tr. p. 58). Sgt. Hedrick moved his patrol car so that he was able to activate the camera in his vehicle. (Tr. p. 60). Deputy Kirkby had a drug dog, Sapper, in his car. (Tr. p. 10). Deputy Kirkby had worked with Sapper for over two years. (Tr. p. 10). The dog had been evaluated this year in April or May and trains once a week. (Tr. p. 49-50). The dog had possibly 5 false alerts in the two years that Deputy Kirkby worked with him. (Tr. p. 5). The dog completed a free air sniff around the vehicle. (Tr. p. 10). The dog made two passes around the vehicle and alerted to the odor of narcotics in the vehicle. (Tr. p. 10). The dog alerted by taking long and deep breaths, snapping its head back, and then scratching the area where it detected the odor. (Tr. p. 11). The passenger remained in the vehicle during the search. (Tr. p. 52, 64).

After the dog alerted, Sgt. Hedrick received the information from his computer check and found that the Defendant had a valid license, but had a criminal history which included narcotics violations. (Tr. p. 58, 66). The officers began searching the vehicle. (Tr. p. 11). In the center counsel, officers found wrappers for $100 bills. (Tr. p. 12). In the back seat were two secured car seats. (Tr. p. 12). The officers removed the car seats and found five black brick-shaped objects along the back seat. (Tr. p. 12). The officers field tested the bricks and the bricks tested positive for the presence of cocaine. (Tr. p. 12, 60). Deputy Kirkby indicated to the other officers near the Defendant that he should be placed in handcuffs. (Tr. p. 12). An officer read the Defendant and the passenger their *Miranda* rights. (Tr. p. 13).

## II. Analysis

The Defendant asserts that the Defendant was unlawfully stopped or in the alternative even if the stop was legal, the duration and the scope of the stop was unreasonable, and therefore, any evidence seized or statements made during the stop should be suppressed.

### A. Traffic Stop

The Defendant asserts that the traffic stop was not based upon any reasonable, articulable suspicion that the Defendant was violating a traffic regulation, and therefore, the stop was unlawful. The Fourth Amendment provides protections to individuals from unreasonable searches and seizures by government officials, and this protection extends to investigatory stops of people or vehicles. *United States v. Johnson*, 192 Fed.Appx. 935, 938 (11th Cir. 2006), (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). A stop of an automobile by police, even if only for a brief period of time and for a limited purpose constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-810 (1996), citations omitted. A traffic stop must not be "unreasonable" under the circumstances. *Id*. at 810. A decision to stop a vehicle is reasonable when the officer has probable cause to believe a traffic violation occurred. *Id*., *See Also*, *United States v. Johnson*, 307 Fed.Appx. 372, 373-4(11th Cir. 2009). The issue of "reasonableness" is determined without consideration as to the intent of the officer. *United States v. Garcia*, 284 Fed.Appx. 791, 793 (11th Cir. 2008). "A traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment.'" *Id*. (quoting *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003)). If an officer does make a mistake of fact, then the only question is whether his mistake was reasonable, and great deference is given to the judgment of an officer. *Id*. (quoting *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003)).

Deputy Kirby testified that he stopped the Defendant's vehicle based upon the Defendant traveling too close to the vehicle in front of him. Deputy Kirkby mentioned that the license plate was obscured as well. Pursuant to Fla. Stat. §316.0895(1), "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon, and the condition of, the highway." A violation of this section is considered a noncriminal traffic infraction which is punishable as a moving violation. Fla. Stat. §316.0895(4).

The Defendant argues that the statute does not provide a specific distance which would constitute following too closely. Further, the Defendant contends that Deputy Kirkby did not testify "as to what was unreasonable and non-prudent about Defendant's driving in light of the conditions that existed." (Doc. 84, p. 7). Deputy Kirkby testified that when he saw the Defendant's vehicle, it was traveling too close to a red car. Deputy Kirkby proceeded to follow the Defendant's vehicle and saw it squeeze in between a blue vehicle and a commercial vehicle, again following too close to the vehicle in front of it. Deputy Kirkby estimated that the vehicles were traveling at a speed of 50 mph. and the Defendant's vehicle was only 3 feet from the vehicle in front of it. Officer Kirkby had probable cause to believe that a traffic violation was occurring when he observed a vehicle traveling at approximately 50 mph. and traveling only 3 feet behind the vehicle in front of it. Deputy Kirkby reasonably determined that this close distance was not "reasonable and prudent." Therefore, the Court finds that Deputy Kirkby had probable cause to stop the vehicle for a violation of Fla. Stat. §316.0895.[3]

---

[3] The Defendant raises the argument that he may have changed lanes to comply with Florida's "Move Over Act." There was no testimony from the Defendant as to why he decided to change lanes, therefore, the Court will not consider the argument regarding the "Move Over Act."

### B. Duration and Scope of the Stop[4]

The Defendant argues that the seizure of the Defendant, and subsequent search of the vehicle were beyond the scope of the stop. The Defendant contends that the traffic stop lasted longer than was necessary to process a traffic violation. The length of a traffic stop must be "'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Frazier*, 194 Fed. Appx. 694, 700 (11th Cir. 2006) (citing *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003)). A stop must be of a limited duration and cannot last "'any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity.'" *Id*. (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001)). The length of the stop is limited to the time necessary to effectuate the purpose of the stop, however, an officer does have an affirmative duty to investigate suspicious circumstances. *Id*. (citing *Purcell*, 236 F.3d at 1277) and *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991)).

Officers are permitted to conduct a variety of checks on the driver and his car which include questioning the driver about the traffic violation, requesting the driver to consent to a search of the car, and running a computer check on the driver for outstanding warrants. *Id*. (citing *United States v. Simmons*, 172 F.3d 775, 778 (11th Cir. 1999) and *Purcell*, 236 F.3d at 1278)). The duration and scope of a stop are not extended when an officer asks questions while he is writing a citation or waiting for a computer check to return. *United States v. Garcia*, 284 Fed.Appx. 791, 794 (11th Cir. 2008). A traffic stop lasting seventeen (17) minutes cannot be unconstitutional based upon its duration because

---

[4] The Defendant mentions in his Motion to Suppress (Doc. 46) that the canine sniff exceeded the scope of the stop. The use of a drug-sniffing dog on the exterior of a vehicle is not considered a search under the Forth Amendment. *United States v. Nelson*, 309 Fed.Appx. 373, 375 (11th Cir. 2009). The drug dog sniff occurred while Sgt. Hedrick was completing the computer check, and therefore, the duration of the stop was not lengthened by the drug dog sniff.

the detention is too short. *United States v. Hernandez*, 418 F.3d 1206, 1211, n.7 (11th Cir. 2005). "We underline that the police are not constitutionally required to move at top speed or as fast as possible." *Id*. The officers must be vigilant about crime, and are permitted during a traffic stop to pause and think about what they have seen or heard and to ask questions. *Id*. The officers are permitted to detain a traffic violator for a "reasonable" amount of time. *Id*.

The Defendant argues that Deputy Kirkby stopped the Defendant at 7:03p.m. and radioed into dispatch about the traffic stop and gave the make, model, and tag number of the vehicle. The Defendant argues that within seconds, the dispatcher provided Deputy Kirkby with information such as the Defendant's name, driver's license number, street address and registration. The Defendant adds that a criminal history check was done immediately by dispatch through NCIC and FCIC and it returned with "NO RECORDS FOUND." (Doc. 84, p. 12). The Defendant argues that Deputy Kirkby had no reason to detain the Defendant for nineteen(19) minutes before completing the citation and allowing the Defendant to leave. The Defendant contends that the citation is simple to complete and Deputy Kirkby delayed the completion unreasonably.

When Deputy Kirkby stopped the Defendant's vehicle and radioed the information, he did not know whether it was the owner of the vehicle that was driving. Deputy Kirkby is permitted to conduct different types of checks on the driver and his car. Deputy Kirkby is permitted to question the driver about the traffic violation. Deputy Kirkby took time to explain to the Defendant that he would be issuing him a written warning for following too close.

While Deputy Kirkby was in the process of gathering information for the citation as well as writing the citation, he asked the Defendant questions about his travel plans and asked questions clarifying the plans. He also asked about the passenger. Deputy Kirby asked a question or two of the

passenger regarding his travel plans. At thirteen (13) minutes into the traffic stop, Deputy Kirkby radioed for back-up and Sgt. Hedrick arrived shortly thereafter. Sgt. Hedrick completed writing the citation and completed a computer check on the Defendant. While Sgt. Hedrick was completing the computer check, Deputy Kirkby took the drug dog around the car and it alerted. At that point, the officers had a reasonable suspicion that a crime was being committed.

The Court determines that the duration of the stop was not unreasonable, and that the stop did not last any longer than necessary to process the traffic violation and conduct the appropriate checks. Even agreeing that Deputy Kirkby had not completed writing the citation for nineteen (19) minutes, and then gave the task of completing the citation to Sgt. Hedrick, the duration of the stop did not violate the Defendant's Fourth Amendment rights. The Eleventh Circuit found that a stop of the duration of seventeen (17) minutes is not unconstitutional. Further, the Eleventh Circuit noted, " [e]ven *if* seventeen minutes is some minutes longer than the norm, we question whether the Fourth Amendment's prohibition of unreasonable seizures is concerned with such trifling amounts of time, when the seizure was caused at the outset by an apparent violation of the law." *United States v. Hernandez*, 418 F.3d. at n. 7. The duration of this stop prior to the drug dog alerting was a few minutes over nineteen (19) minutes, and therefore, not unreasonable. The Court finds that the duration of the stop was lawful.[5]

**C. Miranda**

The Defendant argues that the statements he made during the stop should be suppressed due to the officers failing to give the Defendant his *Miranda*[6] warnings prior to questioning. Specifically,

---

[5] Based upon the finding that the duration of the stop was lawful, the Court did not address the issue of whether Deputy Kirby's suspicions were reasonable.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

the Defendant argues that he was in custody when he allegedly made a statement taking responsibility for all items located in the vehicle. A traffic stop is more analogous to a *Terry* stop. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). "Generally, a person temporarily detained pursuant to an ordinary traffic stop is not 'in custody' for the purposes of Miranda.." *United States v. Crawford*, 294 Fed.Appx. 466, 473 (11th Cir. 2008), (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). An officer may ask a "moderate number of question" relating to a person's identity and to dispel the officer's suspicions, however, a detainee is not required to respond. *Berkemer v. McCarty*, 468 U.S. at 439. "The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." *Id*. at 440.

Deputy Kirkby asked the Defendant his travel plans and whether he was responsible for the items in the car. There was no testimony that the Defendant was required to answer these questions nor was there any evidence that the atmosphere of the stop was coercive or that the Defendant was restrained in any manner. The Defendant felt comfortable enough to refuse to consent to a search of his vehicle. The Court determines that the Defendant was not in custody during the questioning prior to his arrest, that *Miranda* warnings were not required, and that his statements should not be suppressed.

### III. Conclusion

The Court determines that the stopping of the vehicle was lawful, the length of the stop was lawful, and the Defendant's statements should not be suppressed. Therefore, the Court respectfully recommends that the Motion to Suppress and the Supplemental Motion to Suppress be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this   14th   day of September, 2009.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record