UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                              2:09-cr-27-FtM-29DNF

TIMOTHY WILLIAMS
_____

**OPINION AND ORDER**

On September 14, 2009, United States Magistrate Judge Douglas N. Frazier submitted a Report and Recommendation (Doc. #86) to the Court recommending that Defendant's Motion to Suppress (Doc. #46) and his Supplemental Motion to Suppress (Doc. #65) be denied. Defendant's Objections (Doc. #87) were filed on September 18, 2009, and the Government's Response (Doc. #88) was filed on September 22, 2009.

**I.**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify the magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which

specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609, 94th Cong., § 2 (1976)). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

**II.**

Defendant raises three objections to the Report and Recommendation. The Court will address them in a slightly different order than presented by defendant.

**A. Probable Cause for Traffic Stop**

Defendant objects to the magistrate judge's finding that there was probable cause for the officer to make the traffic stop of the vehicle defendant was driving. The magistrate judge found that there was probable cause that defendant was following another vehicle too closely, in violation of FLA. STAT. § 316.0895(1). The undisputed testimony was that the deputy observed defendant's vehicle traveling on Interstate 75 at approximately 50 miles per hour and squeeze between two other vehicles while only three feet behind the front vehicle. Defendant argues that the probable cause finding is unsupported because the deputy did not testify that the distance was not reasonable and not prudent and the deputy "utterly failed to articulate what was unreasonable and non-prudent" about the driving. (Doc. #87, p. 2.)

The Court overrules this objection.  Both the deputy and the magistrate judge are allowed to use their common sense, and it takes little common sense to know that a vehicle squeezing between two other vehicles moving at 50 miles per hour on an interstate highway while only three feet behind the front vehicle is neither reasonable nor prudent.  Nothing about the conditions described by the deputy provided any basis to find such conduct reasonable or prudent under the circumstances.  Since the deputy had probable cause to believe a traffic infraction was being committed in his presence, the stop of the vehicle was constitutional.  Whren v. United States, 517 U.S. 806, 811-18 (1996).  Therefore, the Court adopts those portions of the Report and Recommendation discussing the factual findings and legal conclusions related to the traffic stop.

**B. Lack of Miranda Warnings**

Defendant also objects to the magistrate judge's conclusion that warnings under Miranda v. Arizona, 384 U.S. 436 (1966) were not required because defendant was not in "custody" during the traffic stop until he was literally arrested after the cocaine was discovered.  Defendant argues that he was in a closed car with handcuffs, and that a reasonable man in his position would not feel free to leave.  Additionally, defendant argues that Miranda rights were required because the officer asked questions unrelated to the traffic stop.  (Doc. #87, pp. 3-4.)

The Court overrules the objection. First, defendant was not placed in a police vehicle or in handcuffs until after the deputy discovered the cocaine and signaled for the backup officer to arrest defendant and the passenger. (Doc. #79, pp. 12-13.) At that point, both persons were advised of their Miranda rights. (Doc. #79, p. 13.) Therefore, during the traffic stop portion of the event defendant was not in handcuffs in a police car.

Second, the appropriate legal standard is not whether a reasonable person would feel free to leave. With any traffic stop, "[a] reasonable person knows that he is not free to drive away from a traffic stop until it is completed, . . ." United States v. Acosta, 363 F.3d 1141, 1149 (11th Cir. 2004). Rather,

> Instead of asking whether a suspect reasonably would feel free to leave, the Berkemer Court instead said the question should be "whether a traffic stop exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimation to require that he be warned of his constitutional rights." [ ] Put another way, suspects "subjected to restraints comparable to those associated with a formal arrest," must be advised of their Miranda rights.

Acosta, 363 F.3d at 1149 (citing Berkemer v. McCarty, 468 U.S. 420 (1984))(internal citations omitted). The Court finds that prior to being placed under arrest, defendant was not subjected to restraints comparable to those associated with a formal arrest, and therefore Miranda warnings were not required.

Finally, the unrelated questions were still asked at a point in time when defendant was not in custody, and therefore Miranda warnings were not required. E.g., United States v. Crawford, 294

Fed. Appx. 466, 473-74 (11th Cir. 2008). Nothing in United States v. Glen-Archila, 677 F.2d 809 (11th Cir. 1982), cited by defendant in support of his objection (Doc. #87, p. 4), holds to the contrary or even involved a traffic stop. Therefore, the Court adopts those portions of the Report and Recommendation discussing the factual findings and legal conclusions related to the Miranda issue.

**C. Duration and Scope of Traffic Stop**

Defendant objects to the magistrate judge's determination that the duration of the traffic stop was not unreasonable, and the magistrate judge's failure to address whether the deputy's suspicions were reasonable. Defendant argues that the magistrate judge improperly created a hard and fast rule as to the permissible length of a traffic stop, and should have considered the deputy's suspicions and whether the suspicions unreasonably prolonged the traffic stop. Additionally, defendant argues that the deputy abandoned the purpose of the traffic stop, thus unlawfully expanding its scope. (Doc. #87, pp. 2-3.)

A traffic stop is a seizure within the meaning of the Fourth Amendment, Delaware v. Prouse, 440 U.S. 648, 653 (1979), but is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or is justified by reasonable suspicion in accordance with Terry v. Ohio, 392 U.S. 1 (1968). United States v. Harris, 526 F.3d 1334, 1337 (11th Cir.), cert. denied, 129 S. Ct. 569 (2008). As stated above, the Court has

found a constitutional traffic stop in this case based upon the deputy's probable cause to believe a traffic infraction had occurred.

A routine traffic stop is more analogous to an investigative detention than a custodial arrest. United States v. Ramirez, 476 F.3d 1231, 1236 (11th Cir.), cert. denied, 551 U.S. 1108 (2007); United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). The Court therefore analyzes the legality of a traffic stop under the standard articulated in Terry v. Ohio, 392 U.S. 1 (1968). Ramirez, 476 F.3d at 1236. This requires that an officer's investigation of the traffic stop be (1) reasonably related in scope to the circumstances which justified the stop in the first place, and (2) limited in duration to the time necessary to effectuate the purpose of the stop. Ramirez, 476 F.3d at 1236; United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003); Purcell, 236 F.3d at 1277.

In discussing the permissible duration of a traffic stop, the Report and Recommendation states in part: "A traffic stop lasting seventeen (17) minutes cannot be unconstitutional based upon its duration because the detention is too short. United States v. Hernandez, 418 F.3d 1206, 1211 n.7 (11th Cir. 2005)." (Doc. #86, pp. 8-9.) The Court sustains defendant's objection to this statement. The footnote relied upon was *dicta*, and the statement was that "we doubt" that seventeen minutes can ever be unconstitutional on account of its duration. It seems clear that

there is no hard and fast time period, and that a court is required to consider the totality of the circumstances when deciding if the detention was too long in duration. Purcell, 236 F.3d at 1278-79.

In this case, Deputy Stephen Kirkby made the traffic stop at 7:03 p.m. After telling defendant the reasons for the stop, Deputy Kirkby told defendant that as long as defendant had a valid driver's license and no outstanding warrants, defendant would be issued a written warning and then be free to leave. Deputy Kirkby obtained defendant's driver's license while defendant was seated in his vehicle, and then had defendant step out of his car and go back to the police vehicle while he wrote the warning. While writing the warning, Deputy Kirkby spoke with defendant, eliciting the conversations summarized in the Report and Recommendation. After about five or six minutes defendant stated his vehicle registration was in that vehicle, and Deputy Kirkby went back to the vehicle and asked the passenger to retrieve the registration. It took the passenger a few minutes to find the registration, and Deputy Kirkby spoke with the passenger as the passenger was looking for the registration. Deputy Kirkby brought the registration back to the police vehicle.

Deputy Kirkby identified the written warning, Defendant's Exhibit 2, as being in his handwriting, and testified it takes anywhere between 5 and 20 minutes to complete the form. (Doc. #79, p. 30.) Most of the information can be obtained from defendant's driver's license, but some comes from the dispatcher. (Id.)

Deputy Kirkby testified that after he completed the written warning, he asked defendant if he was responsible for the items inside the vehicle. Defendant said "yes." (Doc. #79, p. 9.) Deputy Kirkby asked if defendant had any illegal items in the vehicle, and defendant said "no." Id. Deputy Kirkby asked for consent to search the vehicle, and defendant declined to consent (Id. at pp. 9-10.) Deputy Kirkby then radioed for backup, which he testified was 13 minutes into the traffic stop. Sergeant Hedrick arrived in approximately three minutes, having been about three miles away. (Id. at pp. 55-56.) Deputy Kirkby waited for the Sergeant's arrival, and within three minutes after the arrival obtained his drug dog Sapper from his vehicle and walked it around defendant's vehicle. Sapper alerted to the vehicle, and Deputy Kirkby then searched the vehicle.

The Court finds that the traffic stop portion of the detention was finished at approximately 13 minutes into the stop, at the point in time Deputy Kirkby called for a backup officer. At that point in time Deputy Kirkby had completed the warning notice, asked if there was contraband in the vehicle, requested consent to search the vehicle, and had been denied consent. "Ordinarily, when a citation or warning has been issued and all record checks have been completed and come back clean, the legitimate investigative purpose of the traffic stop is fulfilled, and the driver's license and other documents should be returned." United States v. Simms, 385 F.3d 1347, 1353 (11th Cir. 2004). "If a traffic stop is

unjustifiably prolonged past the point when a driver's documents should have been returned, it may be found to have ended at the point when the documents should have been returned, and not when they were actually returned. Id.

The Court finds that the 13 minute traffic stop was not unreasonable in duration. A traffic stop "must last no longer than is necessary to effectuate the purpose of the stop." United States v. Pruitt, 174 F.3d 1215, 1220 (11th Cir. 1999)(quoting Florida v. Royer, 460 U.S. 491, 500 (1983)). An officer may take steps reasonably necessary to protect his personal safety, United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009); investigate the driver's license and the vehicle registration by requesting a computer check, Purcell, 236 F.3d at 1278; ask for and await the results of a criminal history check that is part of the officer's routine traffic investigation, Id. at 1278; and request consent to search the vehicle, Harris, 526 F.3d at 1339 (citing Purcell, 236 F.3d at 1281). Asking defendant if there was contraband in the vehicle and requesting consent after the traffic stop was completed (or should have been completed) was proper since it did not unduly prolong the traffic stop.

> We have also stated that, in reviewing a detention, "it is unreasonable extensions of the duration--not the scope of the [questioning]--that could render an otherwise justified detention unreasonable for Fourth Amendment purposes." United States v. Hernandez, 418 F.3d 1206, 1209 n.3 (11th Cir. 2005). That is, we do not inquire as to the substantive reasonableness of the questions that are asked by a police officer in the context of a traffic

> stop, but only whether the "duration" of the detention was prolonged "for an unreasonable time." Id.

Ramirez, 476 F.3d at 1237 n.11. Similarly, asking for consent to search the vehicle was not improper. Purcell, 236 F.3d at 1280-81; United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999). The thirteen minutes for the traffic stop was clearly not unreasonable under the circumstances of this cases. E.g., United States v. Perkins, 348 F.3d 965, 969-70 (11th Cir. 2003)(citing cases discussing longer detentions); Purcell, 236 F.3d at 1277-78 (14 minutes). As the Report and Recommendation correctly stated, it is unnecessary to evaluate the officer's suspicion in determining the propriety of the duration of the traffic stop up to this point.

Deputy Kirkby continued to detain defendant, however, so the issue becomes whether this continued detention was lawful. The investigative detention in this case began when defendant was detained to await arrival of the backup officer so Deputy Kirkby could use his drug dog. E.g., United States v. Hardy, 855 F.2d 753, 757 (11th Cir. 1988). Under Terry, an officer may prolong a traffic stop in this manner if he has articulable suspicion of other illegal activity, Hardy, 855 F.2d at 758; United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001), or if the initial detention has become a consensual encounter. Pruitt, 174 F.3d at 1220. Here, Deputy Kirkby made defendant wait until the backup officer arrived, apparently retaining defendant's driver's license

and the warning notice.  There is no evidence that this was with the consent of defendant, and since the officer had not returned defendant's driver's license, consent would not be a viable theory in any event.  Pruitt, 174 F.3d at 1220.

The delay to await the arrival of the backup officer so the drug dog could be utilized would have been lawful if there was reasonable suspicion of criminal activity.  E.g., United States v. Davis, No. 09-10758, 2009 WL 2903658 at *2 (11th Cir. Sept. 11, 2009)(ten minute wait for drug dog to arrive was lawful where officer had reasonable suspicion).  The government has not argued in its written responses (Docs. ##51, 85) that there was reasonable suspicion which justified the extended detention.  Upon an independent review of the information known to Deputy Kirkby, it is clear to the Court that such reasonable suspicion did not exist in this case.  See, e.g., Perkins, 348 F.3d at 970-71.

The Court recognizes that the testimony at the suppression hearing contained an inconsistency regarding the completion of the warning notice.  Sergeant Hedrick testified that upon arrival he went to the passenger and engaged him in conversation, asking for the registration and insurance.  Sergeant Hedrick then conferred with Deputy Kirkby, and testified he was asked to complete the warning notice and check defendant through the computer database. Sergeant Hedrick testified he took the warning book to his vehicle and started entering information onto his computer.  Sergeant Hedrick testified he had a new database which takes a little longer

to check out twelve sources. He determined that defendant had a valid license but a criminal history which included narcotics violations. By this time Deputy Kirkby was already taking his dog around defendant's vehicle. The Sergeant completely filled out the rest of the warning, and then spoke with Deputy Kirkby and assisted in the search of the vehicle.

Assuming the sergeant's testimony is accurate, as did the Report and Recommendation, it does not support the continued detention. It is clear that the criminal history check performed by Sgt. Hedrick was not part of Deputy Kirkby's routine procedure, and therefore this case is closer to Boyce than Purcell. Therefore, as in Boyce, Deputy Kirkby should have let defendant go unless he had a reasonable and articulable suspicion of some other criminal wrongdoing. Boyce, 351 F.3d at 1107. As discussed above, there was not such reasonable suspicion in this case.

Not only was there no basis to extend the stop, there was an additional basis for a constitutional violation. Detaining a person while waiting for a drug dog (or for backup to allow use of the dog) because the person had exercised his constitutional right to refuse to consent to a search of his vehicle violates the Fourth Amendment. Boyce, 351 F.3d at 1106. "The police cannot base their decision to prolong a traffic stop on the detainee's refusal to consent to a search. Such a refusal may only be considered when the police have already observed, before asking for permission to search, facts sufficient to raise a reasonable suspicion." Boyce,

351 F.3d at 1110-11. Deputy Kirkby had completed the warning notice without the aid of a backup officer, and only summoned backup when defendant refused to consent to the search. The Court concludes that the backup officer was summoned because of defendant's refusal to consent, in violation of his Fourth Amendment right.

Accordingly, it is now

**ORDERED:**

1. The Magistrate Judge's Report and Recommendation (Doc. #86) is **accepted and adopted in part** to the extent consistent with this Opinion and Order.

2. Defendant's Motion to Suppress (Doc. #46) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted to the extent that the Court finds the extended detention after defendant refused consent violated defendant's Fourth Amendment rights, and all physical evidence seized thereafter is suppressed.

3. Defendant's Supplemental Motion to Suppress (Doc. #65) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of September, 2009.

_____
JOHN E. STEELE
United States District Judge

Copies:
U.S. Magistrate Judge
Counsel of Record
DCCD